# Wascavage *v.* Susquehanna Collieries Company, Appellant.

Argued December 2, 1941. Before SCHAFFER, C. J.; MAXEY, DREW, LINN, STERN, PATTERSON and PARKER, JJ.

*Henry A. Gordon,* with him *Charles C. Lark,* for appellant.

*H. F. Bonno,* for appellee.

OPINION BY MR. JUSTICE MAXEY, January 5, 1942:

This is an appeal from the judgment entered in an action of trespass brought by the plaintiff against the defendant to recover damages for injuries which he claimed he suffered on September 8, 1939. The defendant had rejected on October 28, 1937, the provisions of the Workmen's Compensation Act;* hence this action at law. Plaintiff claimed that while an employee of the defendant in its mine at about 8:30 A. M. September 8, 1939, he received certain bodily injuries. In his statement he sets forth that during the month of August, 1939, he, with a co-employee, had built sixteen steps, each three feet apart, and placed in a section of the mine which had a pitch of approximately sixty degrees. The steps afforded a passageway to the section above. Large quantities of water drained down over the steps, washed away the ground underneath each individual step, and brought with it an accumulation of slush and dirt covering the steps. As a result, several of them became unstable and were covered with slush and dirt. Plaintiff claimed that between August 15 and September 8, 1939, he reported the condition of the passageway to the defendant's fire boss and to the foreman, and also to the general foreman and to the mine superintendent, but

---

* This is the Act of June 4, 1937, P. L. 1552 (re-enacting and amending the Workmen's Compensation Act of June 2, 1915, P. L. 736), parts of which were adjudged unconstitutional on March 27, 1939, in *Rich Hill Coal Co. et al. v. Bashore,* 334 Pa. 449, 7 A. 2d. 302.

that despite this notice the defendant neglected its duty "to provide and maintain safe passageways for the use of the plaintiff and other employees who were engaged in the business of the defendant in and about the colliery." His contention is that while he was working in his regular place of employment as a miner and was carrying a heavy prop about seven feet long by seven inches thick, up the steps, one of the latter gave way and caused him to fall backwards a distance of twenty-five feet to the bottom of the incline, with the result that he was permanently injured.

The specific negligence charged against the defendant is that it failed to provide plaintiff with a reasonably safe place to work and failed to use every precaution to insure the safety of its workmen. After trial a verdict was rendered for the plaintiff in the sum of $10,491.41. This was subsequently reduced by the court to a sum of $7,491.41. Defendant made a motion for judgment n. o. v. on the grounds that there was not sufficient evidence of defendant's negligence and that if the condition of the steps was due to negligence that was imputable solely to the mine foreman. The court below correctly held that this latter defense would have been available under the Act of June 2, 1891, P. L. 176 (52 PS §71) et seq., but that the applicable law was changed by the Workmen's Compensation Act of June 2, 1915, P. L. 736, Article 2, sec. 201, and its reënactment and amendments of June 4, 1937, P. L. 1552, sec. 1 (77 PS §41), and the Act of June 21, 1939, P. L. 520, sec. 1 (77 PS 1939 Supplement secs. 41, 51). Section 201 of the Act of 1915 (supra) provides that "in any action brought to recover damages for personal injury to an employe in the course of his employment, or for death resulting from such injury, it shall not be a defense— (a) That the injury was caused in whole or in part by the negligence of a fellow employe; or (b) That the employe had assumed the risk of the injury; or (c) That the injury was caused in any degree by the negligence of

such employe, unless it be established that the injury was caused by such employe's intoxication or by his reckless indifference to danger. The burden of proving such intoxication or reckless indifference to danger shall be upon the defendant, and the question shall be one of fact to be determined by the jury." Section 202 of the act provides: "The employer shall be liable for the negligence of all employees, while acting within the scope of their employment, including engineers . . . mine-foremen, fire-bosses, mine superintendents . . . the employer shall be allowed by law the right of free selection of such employes from the class of persons thus licensed; and such persons shall be the agents and representatives of their employers, and their employers shall be responsible for the acts and neglects of such employes . . .".

Since in considering a motion for judgment n. o. v. the testimony of the party opposing the motion must be read in the light most advantageous to him, the court below was right in overruling on this record this motion. Plaintiff's own testimony made out a prima facie case in support of his statement of claim. According to his testimony a step gave way as he put his two feet on it and tried to "pull up prop for another step". As the step gave way he fell thirty feet and "landed on his back". The prop fell with him. He testified that he lay where he fell for about twenty minutes and then "taking his time" and "pulling a little bit and sitting down and pulling again", he got the prop to the heading, about two hours after he fell. He worked until about 2 P. M. and then went home, with the assistance of his son. The following two days he "stayed in bed". About two days later plaintiff notified the mine foreman of his injury. The "company doctor", Dr. Hughes, then examined him, gave him some liniment and told him he had rheumatism. Plaintiff stayed home six days and returned to work on September 18th (ten days after the injury). Between September 18th and October 15th he, on account of his injury, was able to work only "four shifts". The com-

pany doctor examined him again and sent him home. He claimed that because of his injuries he has been unable to work since the time stated and that he suffers considerable pain and has been under the care of a physician, Dr. Baluta.

The latter testified that the plaintiff is suffering from "hypertrophic spondylitis", which is a "bone formation in the cartilages between the interbrae of the spine . . . all the lumbar vertebrae are involved, with a sacroiliac joint being solidified. Plaintiff's condition is caused by trauma." He attributed the condition described to plaintiff's fall in the mine on September 8th. He testified that plaintiff's condition "progressively becomes worse", is accompanied by severe pain and that plaintiff's disability is "total and permanent" and that he is unfit for work of any kind. The doctor declared that the symtoms here present do not manifest themselves immediately after an injury. They manifest themselves sometimes weeks afterwards and sometimes months afterwards. Dr. Baluta exhibited to the jury X-ray pictures of plaintiff's spine showing a "bony formation as the result of a hypertrophic spondylitis".

In view of the quoted provisions of the Workmen's Compensation Act (which provisions were *not* declared *un*constitutional by this court in the Rich Hill Coal Company case, supra, or elsewhere) and in view of the evidence offered by plaintiff and in his behalf, the court below was right in refusing to enter judgment n. o. v. for the defendant.

The defendant also filed sixteen reasons for a new trial. Six of these complain that the verdict is excessive and one complains that the verdict is erroneous because it is itemized. The eighth reason is based on the remarks of plaintiff's counsel in his argument to the jury. The ninth, tenth, and eleventh reasons complain of the court's answers to defendant's requests for charge and the twelfth, thirteenth, fourteenth, fifteenth and sixteenth complain of the court's charge.

Whatever excessiveness there was in the verdict was rectified by the court's refusing a new trial providing that plaintiff within ten days should file a remittitur, remitting the amount of the verdict in excess of $7,491.41, and plaintiff's doing so. The other reasons for a new trial are correctly disposed of by the court below in its opinion refusing a new trial. In fact, the motion for a new trial was not pressed when the appeal was argued before the Supreme Court.

The judgment is affirmed.